IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333, et al. | : : : : |
| v. | :   Civil No. CCB-15-813 |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, et al. | : : : : : |

**MEMORANDUM**

Riker J. McKenzie and Ezekiel Givens are members of the International Longshoremen's Association Local 333 (the "Local") and former members of its executive body. Alongside several applicants for membership in Local 333 and, putatively, the Local itself,[1] they sue the Local's parent organization, the International Longshoremen's Association, AFL-CIO (the "International"), several members of its Executive Council, and the Steamship Trade Association of Baltimore, Inc. ("STA"), alleging violation of the Labor-Management Reporting and Disclosure Act, of the Labor Management Relations Act, and of a longstanding consent decree. They moved for a temporary restraining order and preliminary injunction on March 24, 2015, on the basis of their LMRDA claim, seeking to restrain, among other things, the Local's members from voting on a proposed collective bargaining agreement the following day. (*See* Mot. TRO 5, ECF No. 3.)[2] Given the timing of that motion, the defendants were unable to prepare a formal

---

[1] The Local's participation in this lawsuit is contested. It is in trusteeship and the trustee has not endorsed the plaintiffs' position here. Similarly, the standing of the applicants for membership is uncertain.

[2] Specifically, the plaintiffs seek an injunction against the defendants:

> prohibiting any further negotiations or discussions regarding a collective bargaining agreement or any other agreement related to terms and conditions of employment between Defendant ILA and Defendant STA; (b) enjoining the holding of a vote on the latest proposed

1

opposition to it.  Their lawyers, however, participated in a conference call with the court and plaintiffs' counsel on the evening of March 24.  At the end of that call, the court indicated it would deny the motion for a temporary restraining order and it entered an order to that effect on the electronic docket shortly thereafter.  (ECF No. 6.)  This memorandum briefly explains that decision.

"The standard for a temporary restraining order is the same as a preliminary injunction." *Maages Auditorium v. Prince George's Cnty., Md.*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014).  It is an extraordinary remedy available only "if the plaintiff 'establish[es] that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.'" *Id.* at 760 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "[A]ll four requirements must be satisfied."  *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014) (alteration in original) (quoting *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010)).  Counsel in the conference call agreed that this standard governed the court's decision.

As to the merits, the defendants challenge this court's jurisdiction to issue the injunction the plaintiffs seek.  The Norris-LaGuardia Act prohibits injunctions against certain conduct, *see* 29 U.S.C. § 104, and otherwise conditions federal courts' equitable jurisdiction over "labor disputes" on compliance with its requirements, *see* 29 U.S.C. § 101.  Those requirements

---

collective bargaining agreement on March 24, 2015, or at any other time; (c) enjoining Defendants or any of them from engaging in any further collective bargaining until this Court has determined the merits of Plaintiffs' claims; and (d) enjoining Defendants or any of them from proposing a new collective bargaining agreement to Local 33 and its members until this Court has decided the merits of the instant litigation.

*Id.*

demand, among other things, that a complainant seeking equitable protection demonstrate that it has "ma[d]e every reasonable effort to settle [its] dispute."  29 U.S.C. § 108; *see also Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, --- F.3d ---, 2015 WL 1020044, at *5 (9th Cir. 2015) (en banc) (holding that 29 U.S.C. §§ 104, 108 are "independent limitations on a district court's power to issue an injunction, even when" an independent statutory mandate applies to the dispute).  The plaintiffs' papers do not mention that requirement, let alone argue they have satisfied it.  Instead, during the conference call, they argued that their grievances do not arise from a "labor dispute" within the meaning of the Norris-LaGuardia Act, despite the broad statutory definition of that term.  *See, e.g.*, *Burlington N. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 441–42 (1987).  That definition includes "any controversy . . . concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."  29 U.S.C. § 113(c).  Perhaps this case falls outside the scope of that definition, as the plaintiffs insist.  But that conclusion is not obvious where, as here, the plaintiffs seek to delay a scheduled ratification vote on a proposed contract and interrupt any fwhoarther collective bargaining over the terms and conditions of employment.  However the court ultimately resolves that question, the plaintiffs, on the current record, have not demonstrated a likelihood of success.

     Even if the plaintiffs did establish equitable jurisdiction, they have not yet shown the clear and convincing evidence of bad faith they need to attack the trusteeship.  That trusteeship is entitled to a presumption of validity rebuttable only by "clear and convincing proof that [it] . . . was not established or maintained in good faith for a purpose allowable under section 462."  29

U.S.C. § 464(c). That section, in turn, authorizes the establishment of a trusteeship to "restor[e] democratic procedures," among other purposes. 29 U.S.C. § 462. The International placed the Local in trusteeship after a hearing committee found that the Local's executive board had wrongfully attempted to induct 500 new members into the Local. (*See* Mot. TRO Ex. 3, Comm. Report, ECF No. 3-4.) The International deemed that effort anti-democratic insofar as it came on the eve of an anticipated ratification vote on a new collective bargaining agreement. (*See* Mot. TRO Ex. 3, Letter from Rowell to Daggett, Nov. 24, 2014, ECF No. 3-4.) The plaintiffs' motion characterizes the International's reasons for imposing the trusteeship as facially pretextual, and they may ultimately prove that the trusteeship was imposed in bad faith, but the minimal and one-sided evidentiary showing advanced to date does not allow the court to conclude they are likely to do so.

As to the likelihood of irreparable harm, the plaintiffs seek to avoid voting on the proposed contract for fear it might be ratified, subjecting them to its terms "while this challenge to the imposition of a Trusteeship is pending." (Mem. Supp. Mot. TRO 20, ECF No. 3-1.) The plaintiffs' delayed assertion of their claims, however, undercuts the urgency of their concerns. Although the trusteeship was imposed in November, they did not file their complaint until months later, only days before the second scheduled vote on a proposed contract. This motion was not filed until the day immediately before that vote, which had apparently been announced nearly two weeks earlier. And the members of Local 333 have already voted once on a proposed contract negotiated by the trustee in February, which they rejected. To the extent the plaintiffs rely on the allegedly intimidating atmosphere surrounding that last ratification vote, the court notes that membership of the Local *rejected* that contract despite that atmosphere, suggesting

4

both that the alleged intimidation was less serious than the plaintiffs claim and that the likelihood of the harm the plaintiffs fear is less likely than they assert.  Accordingly, the plaintiffs did not demonstrate a likelihood of irreparable harm should this court reject their request.

Last, the court concludes that the balance of equities in this case is, at best, in equipoise, as is any determination of the public interest.  Again, while the plaintiffs ultimately may prevail, their last-minute motion seeks to enjoin the vote on an important contract, with potential collateral consequences to the Local's finances, its membership, and to the Baltimore business community.  They have not shown the circumstances that would justify the extraordinary remedy they seek.

## CONCLUSION

For the reasons stated above, the Court denied the motion for a temporary restraining order by an order entered on the evening of March 24, 2015.


March 25, 2015                                     /S/
Date                                               Catherine C. Blake
                                                   United States District Judge