IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 333 | : : : | |
| v. | : : : | Civil No. CCB-15-00813 |
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO | : : | |

**Memorandum**

Riker McKenzie, Ezekiel Givens, Aaron Barnett, Lamont Coger, Daryl Estep, and Ronald McBride are members of the International Longshoremen's Association Local 333 ("Local 333") and former members of its executive board (collectively "member plaintiffs").[1] Alongside several others of disputed membership status (collectively "nonmember plaintiffs") and, putatively, the Local itself, they sue Local 333's parent organization, the International Longshoremen's Association, AFL–CIO, several members of its executive council[2] (collectively "ILA defendants"), and the Steamship Trade Association of Baltimore, Inc. ("STA"), alleging violations of the Labor–Management Reporting and Disclosure Act, the Labor Management Relations Act, and a longstanding consent decree. Pending before the court are the ILA defendants' motions to dismiss, (ILA Defs.' Mot. Dismiss, ECF No. 35), and to strike Local 333 as a party plaintiff, (Mot. Strike, ECF No. 37), STA's motion to dismiss, (STA Mot. Dismiss, ECF No. 14), and plaintiffs' motion to quash a subpoena. (Mot. Quash, ECF No. 31). The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2014). For

---

[1] Another plaintiff, Calvin Jones, is also a member in good standing; however, he did not serve on Local 333's executive board. (ILA Defs.' Mot. Dismiss, Decl. Lawrence Johnson, Jr. ¶ 5, ECF No. 35-7.)
[2] Defendants Harold Daggett, Benny Holland, Stephen Knott, Gerald Owens, and John Baker are executive officers of the International Longshoremen's Association, AFL-CIO. (Mem. Supp. ILA Defs.' Mot. Dismiss 2 n.3, ECF No. 36).

1

the reasons that follow, the ILA defendants' motion to strike will be granted; the ILA defendants' motion to dismiss will be granted; STA's motion to dismiss will be granted; and the plaintiffs' motion to quash will be denied.

**Background**

This suit arises from a Local 333 membership dispute and the ensuing trusteeship imposed by the ILA and its president, Harold Daggett. In 2012, Local 333 admitted approximately 150 new members as the result of a lottery process. (ILA Defs.' Mot. Dismiss, Ex. B, Committee Report 5–6, ECF No. 35-3). That same year, the membership of Local 333 voted to stop admitting any more new members pending the outcome of ongoing negotiations with the STA. *Id.* at 5–6. Notwithstanding this vote, the executive officers of Local 333 began accepting and processing new applications for membership in 2014. *Id.* at 6. The officers collected initiation fees and "admitted" approximately 500 new members in August and September of 2014 without presenting those individuals for a vote before the membership of Local 333. *Id*. Many of these "new members" had not previously worked or sought work in the industry. *Id.* at 8. For the first time, Local 333 also required these new members to sign a waiver stating they were not entitled to a refund of their fees, even if they never found work through the union. *Id.* at 9.

In early September, a member of Local 333 filed a formal complaint regarding the membership admissions, and Mr. Daggett instructed Local 333 to cease admitting new members. (ILA Defs.' Mot. Dismiss, Ex. A, Letter Dated Sep. 12, 2014, ECF No. 35-2). The ILA held a disciplinary hearing that same month. Findings from the hearing were released on November 24, 2014, in a report by Wilbert Rowell. (Committee Report 1, ECF No. 35-3). The report charged Local 333's executive officers with admitting approximately 500 new members in violation of

the Local's bylaws, citing a provision calling for all new members to be approved by a vote of the membership. *Id.* In conjunction with the fee waiver and relative inexperience of the new membership pool, the Local's actions created the appearance that the officers were in effect "'selling' conditional memberships" to persons "not working [and unlikely to find work] under the collective bargaining agreement." *Id.* at 8–9.

Concerned over all the confusion surrounding the membership issue, Mr. Rowell requested that Mr. Daggett appoint a temporary trustee "[d]ue to the imminence of the vote on the local collective bargaining agreement and the Local 333 election of officers." (ILA Defs.' Mot. Dismiss, Ex. B, Letter Dated Nov. 24, 2014, ECF No. 35-3). Mr. Daggett suspended Local 333's executive board and appointed Mr. Rowell as temporary trustee beginning on December 1, 2014. (ILA Defs.' Mot. Dismiss, Ex. C, Letter Dated Nov. 26, 2014, ECF No. 35-4). Under Mr. Rowell's leadership, the union does not recognize as members the approximately 500 persons whose "admission" led to the trusteeship. (Opp'n ILA Defs.' Mot. Dismiss, Ex. 16, Letter Dated Feb. 27, 2015, ECF No. 46-16).[3]

Mr. Rowell and a committee from the ILA conducted a hearing on December 4, 2014, on the charges regarding member admissions and the need to continue the trusteeship to "restore democratic procedures." (ILA Defs.' Mot. Dismiss, Ex. D, R. & R. Trusteeship Hr'g 2, ECF No. 35-5). Mr. Rowell continued as temporary trustee into the new year, overseeing the executive operations of Local 333 and a February 13, 2015, vote in which the membership of Local 333 rejected the collective bargaining agreement ("CBA") with the STA. (Am. Compl. 24, ECF No. 28). On February 14, 2015, the committee released its report from the December 4, 2014, hearing, recommending continuation of the trusteeship to concentrate, *inter alia*, on maintaining

---

[3] Approximately forty individuals challenged their denial of membership in front of the National Labor Relations Board. These cases were all reportedly dismissed or dropped. (ILA Defs.' Mot. Dismiss, Decl. Wilbert Rowell, ¶ 7, ECF No. 35-1).

accurate membership lists and dealing with the fall-out from Local 333's attempt to admit new members. (R. & R. Trusteeship Hr'g 11, ECF No. 35-5).

With the Local moving forward on collective bargaining negotiations with the STA, the plaintiffs initiated the instant suit on March 20, 2015. (Compl., ECF No. 1). On March 24, 2015, the day before Local 333 was set to vote again on the CBA, the plaintiffs requested a temporary restraining order and preliminary injunction against the vote. (Mem. Supp. Pls.' Mot. TRO 2, ECF No. 3-1). This court denied that motion, *Int'l Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n*, Civ. No. CCB-15-813, 2015 WL 1402342 (D. Md. Mar. 25, 2015), and the Local voted to approve the CBA. (Opp'n Mot. Strike, Ex. 3, Petition of Local 333 Members, ECF No. 47-3). Mr. Rowell has continued to serve as trustee throughout this litigation.

## Analysis

### I. Standard of Review

The motions pending before the court seek relief pursuant to various Federal Rules of Civil Procedure. The following are standards the court applies in resolving these motions.

#### A. Rule 21

The court enjoys "broad discretion in determining whether to drop a party from an action" pursuant to a motion under Rule 21. *Verizon Maryland Inc. v. RCN Telecom Servs., Inc.*, 232 F. Supp. 2d 539, 547 (D. Md. 2002); *see also Weaver v. Marcus*, 165 F.2d 862, 864 (4th Cir. 1948) ("[T]he matter is one in which the court has the right to exercise some discretion . . . ." (citation omitted)). "Principles of fundamental fairness and judicial efficiency are the twin lodestars." *Verizon Maryland Inc.*, 232 F. Supp. 2d at 547. Rule 21 also "provides that the

4

Court may, upon its own initiative, drop parties who are misjoined 'on such terms as are just.'" *Aaberg v. ACandS Inc.*, 152 F.R.D. 498, 501 (D. Md. 1994).

   B. **Rule 12(b)(6)**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (internal citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court does not always have to limit its review

5

to the pleadings. It can also take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

### C. Rule 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). Moreover, "[w]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings." *Blitz v. Napolitano*, 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

## II. Motion to Strike Local 333 as a Party Plaintiff

The ILA defendants move to strike Local 333 as a party plaintiff pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The rule, by its plain language, addresses matters contained in the pleadings. Rule 12(f) does not apply to parties, and "[t]he court is unaware of any Rule which provides for a motion to strike a party." *South v. United States*, 40 F.R.D. 374, 375 (N.D. Miss. 1966).

While styled as a motion to strike, its purpose is to request dismissal of Local 333 as an improperly joined plaintiff. "Accordingly, the Court will disregard the technical name of the motion," *Outen v. Baltimore Cty.*, 177 F.R.D. 346, 348 (D. Md. 1998), and treat it as a motion to drop Local 333 as a party pursuant to Rule 21. For the reasons discussed below, the motion will be granted.

Neither the individual plaintiffs nor their counsel have authority to sue on behalf of Local 333. The local is currently under trusteeship, and the removed executive-officer plaintiffs are not acting in an official capacity. "[F]ormer officers are not authorized to bring or maintain this action on behalf of Local [333]." *Teamsters Local Union No. 2000 v. Hoffa*, 284 F. Supp. 2d 684, 699 (E.D. Mich. 2003).

Nor have the plaintiffs sufficiently alleged permission from the membership to bring suit on behalf of Local 333. They cite a petition signed by some members expressing dissatisfaction with the trusteeship. The petition does not mention litigation. (Opp'n Mot. Strike, Ex. 3, Petition of Local 333 Members, ECF No. 47-3). An informal and incomplete expression of solidarity does not establish permission to sue on behalf of the Local. *See Sawyers v. Grand Lodge, Int'l Ass'n of Machinists*, 279 F. Supp. 747, 754 (E.D. Mo. 1967) (removing Local as party plaintiff because "there is no evidence supporting plaintiffs' contention that the membership of [the Local] joined in this complaint").

Unless authorized by the current trustee or a vote in accordance with the ILA constitution, plaintiffs' counsel "are no longer authorized to speak for the Local." *Cty., Mun. Emps.' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union*, 365 F.3d 576, 578–79 (7th Cir. 2004). Accordingly, the motion to drop Local 333 as a party plaintiff will be granted.

**III.    ILA defendants' Motion to Dismiss**

**A. Count One**

Count I alleges that the ILA defendants, by imposing a trusteeship over Local 333, violated the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 462, 464 ("LMRDA"). (Am. Compl. 42–43, ECF No. 28). The ILA defendants move to dismiss Count I as to the nonmember plaintiffs[4] for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and as to the member plaintiffs for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

*a. Nonmember Plaintiffs*

The ILA defendants move to dismiss the nonmember plaintiffs' LMRDA claim for lack of subject matter jurisdiction. The motion will be granted, though not pursuant to Rule 12(b)(1). "A 12(b)(1) motion addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of his claim, and a 12(b)(6) motion addresses whether [the plaintiff] has stated a cognizable claim, a challenge to the sufficiency of the complaint." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). This court has subject matter jurisdiction over cases alleging violations of the LMRDA, a federal statute, under its federal question jurisdiction. *See* 28 U.S.C. § 1331. When, as is the case here, defendants challenge an element of a federal statutory claim—specifically, whether a plaintiff is a member of the group(s) entitled to relief—they challenge the sufficiency of the complaint. *Holloway*, 669 F.3d at 453 (holding 12(b)(6) rather than 12(b)(1) applicable when issue raised was whether plaintiff fell under definition of a "seaman," a requirement to obtain

---

[4] For the purposes of ruling on this motion, the court assumes the nonmember plaintiffs join in Count I. This is not clear from the text of the amended complaint.

relief under the Jones Act). Whether the plaintiffs are "members" is thus an element of an LMRDA cause of action. *See* 29 U.S.C. §§ 402(o), 464(a).

Accordingly, "[w]hether in fact plaintiff is a 'member' and thus qualifies for these rights goes to the issue of failure to state a claim upon which relief can be granted and not to the issue of jurisdiction." *Axelrod v. Stoltz*, 264 F. Supp. 536, 539 (E.D. Pa. 1967). The court will consider the motion as one for failure to state a claim upon which relief can be granted. *See, e.g.*, *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1008 (6th Cir. 2009) (considering claims raised under Rule 12(b)(1) "as if they had been raised in a Rule 12(b)(6) motion"); *Elnadi v. Upinder Singh, DDS, PC*, Civil No. ELH-12-1762, 2013 WL 1855977, at *3 (D. Md. Apr. 30, 2013) (listing cases).[5]

The LMRDA authorizes trusteeships, but allows only those implemented "in accordance with the constitution and bylaws of the organization which has assumed [the] trusteeship" and serving a particular purpose, such as "restoring democratic procedures." 29 U.S.C. § 462. A "member . . . of a labor organization" may file suit for violation of the trusteeship provisions of the LMRDA. *Id.* § 464(a). The statute defines the term "member":

> "Member" or "member in good standing", [sic] when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

*Id.* § 402(o). Thus, to succeed on a claim under the LMRDA, the plaintiffs need to have "fulfilled the requirements for membership." *Id.*

Even when all other membership requirements have been met, a plaintiff will not be considered a "member" under the LMRDA if the union must take action to bestow membership

---

[5] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

9

and fails to do so. *See Moynahan v. Pari-Mutuel Emps. Guild of Cal., Local 280*, 317 F.2d 209, 210 (9th Cir. 1963) (plaintiff who had met all other requirements was not a "member" under the LMRDA because he had not received the required "two-thirds favorable vote of the current members"); *Stanley v. Int'l Bhd. of Elec. Workers*, 207 F. App'x 185, 188 (3d Cir. 2006) ("When a union's constitution gives the local union the discretion to accept or deny membership to applicants, unsuccessful applicants have not fulfilled the requirements for membership, and thus are not members of the local union.").

By the plaintiffs' own admission, the nonmember plaintiffs have not fulfilled all requirements for membership in Local 333. Local 333's bylaws provide "[a]n applicant having made their application in proper form, having paid the initiation fee and having been approved by a vote of a majority of the membership present at a regular or special meeting of this Local Union shall be deemed a member." (ILA Defs.' Mot. Dismiss, Decl. Lawrence Johnson, Jr. ¶ 2, ECF No. 35-7). Conceding the nonmember plaintiffs were never approved by a vote of a majority of the membership, the plaintiffs nonetheless contend "Local 333 never has followed such a procedure for any of its members." (Opp'n ILA Defs.' Mot. Dismiss 4, ECF No. 46). Even accepting this as true, failure to follow a requirement in the past does not render it inoperative. *Cf. Brady v. Int'l Bhd. of Teamsters, Local 817*, 741 F.3d 387, 390 (2d Cir. 2014) ("In any event, that IBT Local 817 perhaps only rarely exercised its discretion to reject an eligible applicant did not disable it from rejecting Brady's application."). Indeed, by not following this requirement and proceeding with new member admissions, the executive board effectively ignored the March 2012 vote by the Local's membership to cease admitting new members until they settled the CBA contract dispute.

While the plaintiffs' past experience could be relevant in interpreting an ambiguous term in the bylaws, the express and unambiguous language makes an affirmative vote a requirement for membership.[6] Accordingly, because the nonmember plaintiffs have not met this express requirement, they are not "members" for the purposes of the LMRDA and are unable to state a claim under the statute. The nonmember plaintiffs' claims in Count I will be dismissed pursuant to Rule 12(b)(6).[7]

### b. Member Plaintiffs

The parties do not dispute the membership status of the remaining plaintiffs. The ILA defendants nonetheless move to dismiss Count I as to the member plaintiffs pursuant to Rule 12(b)(6). Trusteeships implemented after a fair hearing and in accordance with the procedural requirements of a union's constitution and bylaws "shall be presumed valid for a period of eighteen months from the date of its establishment." 29 U.S.C. §464(c). The trusteeship imposed on Local 333 is still within this eighteen month period. Thus, "for [a plaintiff] to challenge successfully the imposition of a trusteeship, it must either demonstrate that the trusteeship was not imposed in conformity with procedural requirements, or, it must produce 'clear and convincing' proof that the trusteeship was not established or maintained in good faith for a purpose allowed by statute." *Teamsters Local Union No. 406 v. Crane*, 848 F.2d 709, 712 (6th Cir. 1988).

---

[6] "The Union constitution is a contract between the Union and its members." *Int'l Org. of Masters v. Prevas*, 175 F.3d 341, 343 (4th Cir. 1999). "Although courts use course of performance and course of dealing in interpreting contract terms, 'express terms are given greater weight than course of performance [and] course of dealing.'" *Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002) (quoting Restatement (Second) of Contracts § 203(b) (1981)).

[7] In *Holloway*, the Fourth Circuit adopts a narrow interpretation of *Arbaugh*'s holding that, based in part on its location within the statute, Congress may "clearly state[] a threshold limitation on a statute's scope shall count as jurisdictional." *Arbaugh*, 546 U.S. at 516. This court follows *Holloway* in finding the membership requirement of LMRDA to be an element of the claim notwithstanding its reference in a jurisdictional provision of the statute. Nonetheless, even if the membership requirement was jurisdictional, the nonmembers' claim would fail for the same reasons under Rule 12(b)(1).

Plaintiffs offer only conclusory allegations that the hearing on December 4, 2014, was not a "fair hearing."[8] A fair hearing requires notice and an opportunity to defend. *Becker v. Indus. Union of Marine & Shipbuilding Workers*, 900 F.2d 761, 768 (4th Cir. 1990). The notice must be in writing and provide "the factual basis for alleged violations of law or the union's constitution that justify imposition of a trusteeship." *Id.* "The notice should also provide the date, time, and location of the hearing and indicate that the local will have the opportunity to respond to the charges." *Id.* Plaintiffs received adequate notice. Following a disciplinary hearing that laid out the factual basis for the alleged violations, the plaintiffs received a letter from Mr. Daggett on November 26, 2014, imposing the trusteeship and setting a hearing to review the trusteeship on December 4, 2014.[9] Plaintiffs knew of the hearing's location and their opportunity to respond—they attended the hearing and "presented testimony and approximately 600 pages of supporting documentation." (Am. Compl. 33, ECF No. 28; *see also* Opp'n ILA Defs.' Mot. Dismiss 14, ECF No. 46).

For the hearing itself to be adequate, the international must "present evidence and witnesses in support of the reasons for imposing the trusteeship" and allow the Local to "cross-examine the international's witnesses and present rebuttal evidence." *Becker*, 900 F.2d at 768–69. The trusteeship hearing met these requirements. It appears the plaintiffs' challenge to the hearing is really about their disagreement with its outcome. Even viewing all facts in a light favorable to the plaintiffs, the ILA imposed the trusteeship in accordance with the "minimum fair hearing requirements." *Becker*, 900 F.2d at 768.

---

[8] The plaintiffs also fail to support their assertion that "the establishment and administration of the Trusteeship is contrary to the provisions of the ILA Constitution and Bylaws." (Am. Compl. 40, ECF No. 28).

[9] While the trusteeship was imposed before the hearing, "a hearing meeting the requirements of the Act need not always precede the imposition of a trusteeship." *Becker*, 900 F.2d at 769. Plaintiffs have not alleged the ILA constitution prohibits post-hoc ratification of trusteeships.

The plaintiffs' remaining allegation, that the trusteeship was not imposed in good faith, also falls short. Plaintiffs have alleged the trusteeship's stated purpose, "restoring democratic procedures," was pretext for taking over Local 333 in advance of voting on a collective bargaining agreement and local leadership elections. "[I]t is possible to prove an absence of good faith by proving that the proffered reasons for imposing the trusteeship are pretextual . . . ." *Id.* at 714. To survive a motion to dismiss, however, the facts alleged must "raise a reasonable expectation that discovery will reveal evidence" of pretextual intent. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Sufficient facts have not been alleged in the instant case. Plaintiffs concede they did not follow the bylaws when admitting approximately 500 new members. This occurred in the months preceding Local 333 leadership elections and a vote on a collective bargaining agreement. The plaintiffs rely on this timeline to argue the trusteeship was imposed with pretextual intent. While it may be conceivable that the ILA defendants imposed the trusteeship as pretext for controlling the upcoming votes, the plaintiffs' reliance on a timeline dictated by their violations of the bylaws is not enough to push "their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Without more, there is no "reasonable expectation" that discovery would lead to evidence of pretextual intent. Accordingly, the motion to dismiss Count I with respect to the member plaintiffs will be granted.

### B. Count Two

The nonmember plaintiffs allege the ILA defendants violated section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("LMRA"), by rejecting their membership in the ILA and Local 333 in violation of the ILA Constitution. The ILA defendants move to dismiss Count II due to the nonmember plaintiffs' lack of standing and, in the alternative, for failure to

state a claim upon which relief can be granted. For the reasons discussed below, the defendants' motion to dismiss Count II will be granted.

Plaintiffs do not have standing to pursue this claim. Section 301 of the LMRA provides federal jurisdiction over suits for violation of a labor union contract. *See* 29 U.S.C. § 185. "[A] suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991). An international union's "constitution may be fairly characterized as a contract between labor organizations." *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus.*, 452 U.S. 615, 619 (1981). While section 301 does not limit the court's jurisdiction to only the contracting parties, a plaintiff "must have personal standing." *Wooddell*, 502 U.S. at 99 n.4. Only those persons with standing to enforce the underlying contract may bring a suit under section 301.[10]

The nonmember plaintiffs are not parties to the ILA constitution. Nor are they members of the ILA or Local 333. "[P]ersons not members of a union normally lack standing to bring a claim against it for breach of its own constitution." *United Bhd. of Carpenters & Joiners v. Tile*

---

[10] *Wooddell* reveals a distinction in how the court reviews a plaintiff's capacity to sue under a federal statute. When a statute specifies who is entitled to relief under its provisions (e.g. "members" in the LMRDA), whether a plaintiff falls within that group is an element of the federal claim subject to dismissal under Rule 12(b)(6). *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *Holloway*, 669 F.3d at 453. In contrast, section 301 of the LMRA specifies a cause of action (violation of a union contract) over which a party may sue; it does not delineate a specific group entitled to that relief. Thus, a particular plaintiff's ability to seek relief under section 301 is not an element of the federal claim; rather, it is a question of standing to enforce the underlying contract—a jurisdictional question subject to Rule 12(b)(1). *See Wooddell*, 502 U.S. at 98–99 (discussing how subject matter jurisdiction hinges on whether (1) the suit alleges violation of a union contract and (2) "one in petitioner's position may properly bring such a suit"). If a plaintiff cannot bring suit for breach of the relevant bargaining agreement, it does not matter if she pleads a violation of a federal statute; her lack of standing renders the claim "completely devoid of merit as not to involve a federal controversy." *Holloway*, 669 F.3d at 452.

*Helpers Union Local 88*, 740 F. Supp. 167, 169 (E.D.N.Y. 1990). The nonmember plaintiffs also lack standing because they are not the intended beneficiaries of the ILA constitution. *See Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 898 (4th Cir. 1992) (recognizing union members as third-party beneficiaries to a union contract is a "limited exception" to the "general rule that section 301 litigants must be parties to the relevant bargaining agreement"). Accordingly, "[w]rongful denial of union membership does not come within the ambit of . . . [section] 301 of the LMRA*.*" *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1254 (2d Cir. 1970).

This court therefore lacks subject matter jurisdiction. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) ("[S]tanding is a threshold, jurisdictional issue . . . ."). Count II will be dismissed pursuant to Rule 12(b)(1).

**C. Count Three**

Count III alleges violations of a 1970 consent decree issued by Judge Alexander Harvey, II. The plaintiffs seek varied equitable remedies in response to these alleged violations. The ILA defendants move to dismiss for lack of standing. For the reasons discussed below, the court finds the plaintiffs lack standing to seek modification of the consent decree, and Count III will be dismissed for a lack of subject matter jurisdiction.

The consent decree arose from Judge Harvey's order in *United States v. Int'l Longshoremen's Ass'n*, 319 F. Supp. 737 (D. Md. 1970). It mandated the merger of Locals 829 and 858 (Local 333's predecessors), implementation of a seniority system, and various reporting requirements. (Am. Compl., Ex. 1, Decree, ECF No. 28-2). The court also retained jurisdiction over the consent decree, with the power to "alter" or "amend" the decree and "issue any additional orders as becomes necessary to insure equal employment opportunities." *Id.* at 9.

15

Third-party intended beneficiaries may seek enforcement or extension of a consent decree. *See, e.g.*, *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir.1993); *Bowman v. Maryland Mass Transit Admin.*, 43 F.3d 1465, 1465 n.1 (4th Cir. 1994). This flows from basic principles of contract law. *See Hook v. State of Arizona, Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992) ("[E]nforcement of consent decrees is governed by the established contract principle that non-parties, as intended third party beneficiaries, may enforce an agreement."). Nonetheless, "[a] federal district court may not use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved." *Johnson v. Robinson*, 987 F.2d 1043, 1046 (4th Cir. 1993). In order to modify the decree and impose remedies beyond those "contained within the 'four corners' of the consent decree," the court must provide the parties with certain procedural safeguards, such as notice, hearing, and a ruling supported by specific findings. *Id.* at 1049–50. Seeking modification of a consent decree is distinct from seeking enforcement of the decree's existing terms.

Plaintiffs do not allege that the parties to the consent decree failed to carry out the remedies provided therein. They instead ask the court to craft new remedies, pursuant to the decree's clause allowing the court to "issue any additional orders as becomes necessary to insure equal employment opportunities." (Decree 9, ECF No. 28-2). The plaintiffs seek modification of the consent decree rather than enforcement of its existing terms. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574–75 (1984) (holding that plaintiffs sought more than enforcement by requesting remedies outside the scope of the decree, notwithstanding language allowing additional orders that "may be necessary or appropriate to effectuate the purposes of [the] decree"). The plaintiffs are not parties to the consent decree; at best, they may be intended third-party beneficiaries. This is not enough. The plaintiffs have not cited, and this court is not

aware of, any precedent allowing a nonparty to modify the terms of a contractual agreement. Accordingly, the plaintiffs lack standing to seek modification of the consent decree. Count III will be dismissed pursuant to Rule 12(b)(1).

## IV. STA's Motion to Dismiss

STA filed a separate motion to dismiss Count III.[11] For the reasons discussed above, Count III will be dismissed as to STA pursuant to Rule 12(b)(1).

## V. Motion to Quash

The plaintiffs move to quash the ILA defendants' subpoena for Mr. McKenzie's bank records. The ILA defendants have not served the contested subpoena. The motion to quash will be denied as moot.

## Conclusion

For the reasons stated above, the motion to strike Local 333 as a party plaintiff, the ILA defendants' motion to dismiss, and the STA's motion to dismiss will all be granted. The plaintiffs' motion to quash will be denied as moot.

A separate order follows.

October 30, 2015                                            /S/
Date                                                    Catherine C. Blake
                                                             United States District Judge

---

[11] While STA's motion to dismiss was directed at the original complaint, Count III of the amended complaint is nearly identical to the original. Accordingly, the court treats it as a motion to dismiss the amended complaint. The remaining counts in the amended complaint apply only to the ILA defendants.